**K. Douglas SCRIBNER and Laurie B. Scribner, Plaintiffs–Appellants,**

v.

**John M. SUMMERS, Stephen A. Summers, and Jasco–Sun Steel Treating, Inc., Defendants–Appellees.**

No. 1065, Docket 95–7739.

United States Court of Appeals, Second Circuit.

Argued March 14, 1996.

Decided May 21, 1996.

Alan J. Knauf, Rochester, NY (Robert L. Beck, Rochester, NY, of counsel), for Plaintiffs–Appellants.

Michael W. Malarney, Rochester, NY, for Defendants–Appellees.

Before CARDAMONE, WALKER, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Douglas and Laurie Scribner appeal from a decision and order of the United States District Court for the Western District of New York (David G. Larimer, *Judge*), entered after a bench trial. The district court found that the Scribners had not proven common law causes of action, under New York law, for strict liability, trespass, or private nuisance.

## BACKGROUND

K. Douglas Scribner and Laurie B. Scribner own property located in the Town of Perinton, Monroe County, New York. Their property consists of about 0.8 acres, is zoned industrial, and includes a 9,500 square-foot single-story building. The Scribners use the

property both for their family business and to rent to tenants.

Jasco Sun–Steel Treating, Inc., John Summers, and Stephen Summers (together, "Jasco") own and operate a steel-treating business on property bordering the Scribners' property to the north and east. A drainage "swale," basically a drainage ditch, runs downhill from Jasco's property to an area adjacent to the Scribners' property line.

Jasco is in the business of heat-treating metal objects and ball bearings to harden them for military and industrial uses. In its treatment process, Jasco uses several large concrete furnaces that leave a sludge residue containing high levels of barium chloride. From time to time, those furnaces needed to be cleaned and/or replaced. As part of that process, Jasco took the old furnaces outside the building and washed them down with water, in close proximity to the Scribners' property. In addition, from 1979 until 1990, Jasco used jackhammers to break up these old furnaces outside the building so that they could be more easily transported off site for disposal. A drain, which empties into the swale, is located on the concrete pad where the furnaces were cleaned and demolished.

In 1986, the New York State Department of Environmental Conservation ("NYDEC") designated barium as a hazardous waste. Several years later, the NYDEC began investigating both Jasco's facility and its other waste disposal practices. After this investigation, Jasco was indicted in New York state court for violations of the Environmental Conservation Law, and the NYDEC registered Jasco's facility as an inactive hazardous waste site. In 1994, Jasco and one of its officers were convicted and were substantially fined.

In late 1991, the Scribners decided to sell their property. In 1992, an offer was made on the property, and the Scribners began negotiations with the potential buyer. The Scribners offered to sell the property for $375,000, and the buyer countered with $335,000. Eventually, the Scribners reduced their sale price to $350,000. The buyer, however, withdrew his offer. According to the Scribners' real estate broker, the offer was withdrawn because of published reports that Jasco "had been indicted on charges of improperly disposing hazardous material." The Scribners have been unable to sell the property since that time.

The Scribners sued Jasco in the United States District Court for the Western District of New York, claiming that their property had been contaminated by Jasco's waste disposal practices. In particular, the Scribners asserted claims under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., as well as strict liability, trespass, and private nuisance claims under New York common law.

A bench trial was held before Judge David G. Larimer. After resolving a boundary dispute in the Scribners' favor, the court concluded that the Scribners' "property is contaminated because of the high levels of barium," and—most significantly—"that that chemical substance originated on [Jasco's] property." Scribner v. Summers, No. 94–CV–6094L, slip op. at 10 (W.D.N.Y. July 10, 1995).

Having found that Jasco contaminated the Scribners' property, the court granted the Scribners their response costs, pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), as well as a declaratory judgment that Jasco is responsible for the Scribners' future response costs. It then held, however, that the Scribners had failed to prove any of their asserted common law tort causes of action.

The Scribners now appeal, arguing that the district court erred by holding that Jasco was not liable under strict liability, trespass, or private nuisance. Jasco does not appeal the district court's finding of liability under CERCLA.

We reverse and remand.

## DISCUSSION

The notion that each must use his property so as not to injure his neighbor—sic utere tuo ut alienum non laedas—may be traced at least to the Digest of Justinian. See 4 The Digest of Justinian, "De Cloacis," at 601 (Theodor Mommsen & Paul Krueger eds. & Alan Watson trans., Univ. of Pa. Press

1985) (concerning drains). It has been emphasized in Coke, *see* 9 Edward Coke, Institutes 59, and Blackstone, who made it axiomatic to generations of common lawyers. *See* 3 William Blackstone, Commentaries 217 (1765). Although a New York court has found it "utterly useless as a legal maxim," *Auburn & Cato Plank–Road Co. v. Douglass*, 9 N.Y. 444, 446 (1854), its core value continues to permeate modern property law.

The Scribners contend that the district court erred by holding that Jasco was not liable under the tort-law theories of trespass, private nuisance, or strict liability. We agree with the Scribners as to trespass and nuisance, but take no position on the strict liability theory.

### I. Standard of Review

"Following a bench trial, we may not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir.1994). The district court's application of those facts to draw conclusions of law, however, is subject to *de novo* appellate review. *Id.* at 1575 (citation omitted). This *de novo* standard "is equally applicable to so called mixed questions of law and fact." *Id.* (citation omitted).

### II. Trespass

The Scribners maintain that Jasco trespassed on their property because of the migration or leaching of barium particles across Jasco's property onto the Scribners' property. We agree.

Under New York law, trespass is the intentional invasion of another's property. *See Ivancic v. Olmstead*, 66 N.Y.2d 349, 352, 497 N.Y.S.2d 326, 488 N.E.2d 72 (1985), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986); *Phillips v. Sun Oil Co.*, 307 N.Y. 328, 331, 121 N.E.2d 249 (1954); *see also New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). To be liable, the trespasser "need not intend or expect the damaging consequences of his intrusion[;]" rather, he need only "intend the act which amounts to or produces the unlawful invasion." *Phillips*, 307 N.Y. at 331, 121 N.E.2d 249; *see New York State Nat'l Org. for Women*, 886 F.2d at 1361. The intrusion itself "must at least be the immediate or inevitable consequence of what [the trespasser] willfully does, or which he does so negligently as to amount to willfulness." *Phillips*, 307 N.Y. at 331, 121 N.E.2d 249; *see also Ivancic*, 66 N.Y.2d at 352, 497 N.Y.S.2d 326, 488 N.E.2d 72.

There is a body of law on trespass claims arising from the movement of noxious liquids from one property to another. The New York Court of Appeals has held that:

> even when the polluting material has been deliberately put onto, or into, defendant's land, he is not liable for his neighbor's damage therefrom, unless *he (defendant) had good reason to know or expect* that subterranean and other conditions were such that there would be passage from defendant's to plaintiff's land.

*Phillips*, 307 N.Y. at 331, 121 N.E.2d 249 (emphasis added).

Although the district court cited the *Phillips* case as the appropriate standard for a cause of action in trespass, it held that the Scribners had failed to prove the requisite intent on the part of Jasco:

> Although officers of defendants were aware that barium chloride was created by its manufacturing process, barium was not put on the state's hazardous waste list until 1986. This barium material was apparently generated from operation on defendants' site, most likely in connection with the cleaning and destruction of old furnaces and equipment used in the business. *There is no evidence, however, that defendants intended the water used in that cleaning process to enter plaintiffs' land.* In fact, there was no proof that anyone ever observed water running off of defendants' property onto plaintiffs' property. If water that had been contaminated seeped into the soil on defendants' property and thereafter migrated through the soil onto plaintiffs' property, there is no proof that defendants intended that to occur or that defendants' acts were so reckless that

they should be charged with that consequence.

*Scribner,* No. 94–CV–6094L, slip op. at 22 (emphasis added).

We find this holding erroneous. In determining whether Jasco had the requisite intent for trespass under New York law, the issue is not, as the district court held, whether "defendants intended the [contaminated] water used in [its] cleaning process to enter plaintiffs' land." *Id.* Rather, under *Phillips,* the appropriate standard is whether Jasco: (i) "intend[ed] the *act* which amounts to or produces the unlawful invasion," and (ii) "had good reason *to know or expect* that subterranean and other conditions were such that there would be passage [of the contaminated water] from defendant's to plaintiff's land." *Phillips,* 307 N.Y. at 331, 121 N.E.2d 249 (emphasis added).

Applying this standard, we conclude that Jasco is liable to the Scribners in trespass. In 1986, the NYDEC listed barium as a hazardous waste. Nonetheless, from 1986 until 1990, Jasco continued to take its barium-tainted furnaces outside its building and demolish them on site using jackhammers. *See Scribner,* No. 94–CV–6094L, slip op. at 3. Moreover, it was Jasco's practice to "wash [the furnaces] down with water on site in close proximity to [the Scribners'] property." *Id.* As Jasco concedes, "in the process of removing and breaking up the worn out furnaces, small amounts of barium salts escaped onto the pavement. These barium particles were carried by moving water into a swale on Jasco's land, but near the boundary with plaintiffs." Appellee's Brief at 15. Further, the parties agree that the Scribners' property was located downhill from Jasco's property. While the swale appears to run parallel to the Scribners' property, the briefs are fuzzy on this important issue. Nevertheless, one conclusion is inescapable: the barium in the Scribners' soil came from the Jasco site. The district court so found. *See Scribner,* No. 94–CV–6094L, slip op. at 10.

The district court cited several New York cases to support a finding that the Scribners had not proven their trespass claim. In the cases cited, however—unlike our case—the release of toxic substances into the environment was inadvertent (*i.e.,* nonwillful) and/or defendants did not have "good reason to know or expect" that the invasion of plaintiff's property would occur. The cases are simply inapposite. *See, e.g., Phillips,* 307 N.Y. at 330, 121 N.E.2d 249 (no claim for trespass where there is no indication as to how fluid passed from defendant's to plaintiff's property or that "defendant knew, or had been put on notice, that gasoline was escaping from its underground tank"); *Snyder v. Jessie,* 164 A.D.2d 405, 565 N.Y.S.2d 924, 925, 929, (4th Dep't 1990) (insufficient allegations to show trespass where defendant inadvertently overfilled a customer's underground oil tank which then leaked onto plaintiffs' property), *appeal dismissed,* 77 N.Y.2d 940, 569 N.Y.S.2d 613, 572 N.E.2d 54 (1991); *Theofilatos v. Koleci,* 105 A.D.2d 514, 481 N.Y.S.2d 782, 783–84 (3d Dep't 1984) (no liability for intentional trespass where natural surface water seeped through defendant's deteriorating retaining wall onto plaintiff's property); *Chartrand v. State,* 46 A.D.2d 942, 362 N.Y.S.2d 237 (3d Dep't 1974) (no liability for intentional trespass where gas inadvertently leaked from defendant's storage tanks into plaintiffs' basement).

■ Under *Phillips,* Jasco intended the acts which caused the invasion of the Scribners' property. *Scribner,* No. 94–CV–6094L, slip op. at 10 ("[T]he contamination [on the Scribners' property] was caused over time by the business operations and activities at the Jasco site."). And, on these facts, we find that Jasco "had good reason to know or expect," *see Phillips,* 307 N.Y. at 331, 121 N.E.2d 249, that barium particles would pass from the pavement where the furnaces were washed and demolished, into the swale, and onto the Scribners' property, which was located at a lower elevation level. We therefore conclude that Jasco is liable in trespass for the damage caused to the Scribners' property.

III. *Private Nuisance*

The Scribners also contend that Jasco's conduct was sufficient to create a private nuisance. Again, we agree.

"A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land. It is actionable by the individual person or persons whose rights have been disturbed." *Copart Indus. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977) (citations omitted); *see also New York v. Shore Realty Corp.,* 759 F.2d 1032, 1050 (2d Cir. 1985). In order to establish liability under a private nuisance theory, plaintiff must show that defendant's conduct:

> is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, *or* (3) actionable under the rules governing liability for abnormally dangerous conditions or activities.

*Copart,* 41 N.Y.2d at 569, 394 N.Y.S.2d 169, 362 N.E.2d 968 (emphasis added).

The elements of a private nuisance cause of action, premised on an intentional and unreasonable invasion, are: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." *Id.* at 570, 394 N.Y.S.2d 169, 362 N.E.2d 968. In particular, an invasion of another's interest in the use and enjoyment of land is "intentional in origin" "'when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct.'" *Id.* at 571, 394 N.Y.S.2d 169, 362 N.E.2d 968 (citations omitted).

We conclude that Jasco's conduct constituted a private nuisance, based on intentional and unreasonable conduct. Specifically, under *Copart,* we find that: (1) there were "high levels of barium" contamination on the Scribner's property, *Scribner,* No. 94–CV–6094L, slip. op. at 10; (2) Jasco knew that contamination was "substantially certain to result" from its conduct, *see Copart,* 41 N.Y.2d at 571, 394 N.Y.S.2d 169, 362 N.E.2d 968, based on its demolition and cleansing practices, as well as the "mov[ement of] water into a swale on Jasco's land, but near the boundary with plaintiffs," Appellee's Brief at 15, which was located downhill from Jasco's property; (3) Jasco's on-site disposal and cleansing practices from 1986 to 1990—coupled with its knowledge that barium is a hazardous waste—were unreasonable; (4) the contamination interfered with the Scribners' use and enjoyment of their land, at the very least because the Scribners are faced with the inconvenience of having the hazardous waste removed from their property, *see Scribner,* No. 94–CV–6094L, slip. op. at 10, 13–14;[1] and (5) Jasco's conduct caused the invasion, *see id.* at 17 ("because of [Jasco's] improper cleaning and demolition of the furnaces, [barium] was allowed to migrate off site onto plaintiffs' property"). We therefore hold that Jasco is liable under a theory of private nuisance.

### IV. *Strict Liability*

The Scribners also argue that Jasco's method of disposal was an ultrahazardous activity that proximately caused the contamination of their property, and thus Jasco is strictly liable for the damage. Because we reverse on the trespass and nuisance claims, however, we decline to reach the issue of strict liability, and take no position that issue.

### V. *Damages*

Although the Scribners ask us to determine damages, we decline the invitation. This task is better left to the district court in the first instance. Thus, we remand this case to the district court, solely on the issue of damages. We note, however, that although we find that Jasco is liable in both trespass and private nuisance, the Scribners are obviously entitled to recover only once for the damage sustained to their property.

---

1. *See also Nussbaum v. Lacopo,* 27 N.Y.2d 311, 315, 317 N.Y.S.2d 347, 265 N.E.2d 762 (1970); *Hay v. Cohoes Co.,* 2 N.Y. 159, 161 (1849); *Drouin v. Ridge Lumber, Inc.,* 209 A.D.2d 957, 619 N.Y.S.2d 433, 435–36 (4th Dep't 1994); *Waters v. McNearney,* 8 A.D.2d 13, 185 N.Y.S.2d 29, 32–33 (3d Dep't 1959), *aff'd,* 8 N.Y.2d 808, 202 N.Y.S.2d 24, 168 N.E.2d 255 (1960); *Nalley v. General Elec. Co.,* 165 Misc.2d 803, 630 N.Y.S.2d 452, 455, 457 (Sup.Ct.1995).

## CONCLUSION

Robert Frost counseled that "good fences make good neighbors." Robert Frost, "Mending Wall," in The Poetry of Robert Frost 33–34 (Edward Latham ed., 1969). Alas, if only Mr. Frost had fashioned a solution to migrating barium. The decision of the district court is REVERSED and REMANDED for a determination of damages.