224 F.3d 85 (2nd Cir. 2000)
 GUSSACK REALTY COMPANY and GENERAL BEARING CORPORATION, Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees,
THE ORATAMIN CLUB, INC., Plaintiff,
v.
XEROX CORPORATION, Defendant-Counter-Claimant-Appellee-Cross-Appellant.
 Docket Nos. 99-7759(L); 99-7889(XAP)
August Term 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: May 16, 2000
Decided: August 22, 2000
 
 Appeal and cross-appeal from a judgment of the United States District Court for the Southern District of New York (Brieant, J.), dismissing various of plaintiffs' state-law causes of action, entering judgment following a jury verdict on plaintiffs' CERCLA and state-law negligence claims, and ordering sanctions against defendant's counsel.
 AFFIRMED in part, REVERSED in part, and REMANDED.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 HAROLD J. RUVOLDT, Jr., Fischbein, Badillo, Wagner & Harding, (Cathy Fleming, on the brief), New York, N.Y., for Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees.
 ROBERT E. CROTTY, Esq., Kelley Drye & Warren LLP, (Jonathan K. Cooperman, Jeffrey C. Dodson, on the brief), New York, N.Y., for Defendant-Counter-Claimant-Appellee-Cross-Appellant.
 Before: MINER and WALKER, Circuit Judges, BUCHWALD,* District Judge.
 PER CURIAM:
 
 
 1
 Gussack Realty Co. and General Bearing Corp. ("plaintiffs"), appeal from a May 28, 1999 judgment of the United States District Court for the Southern District of New York, (Charles L. Brieant, District Judge), awarding plaintiffs $1,083,585 following a jury verdict. Defendant-counter-claimant-appellee-cross-appellant Xerox Corp. ("Xerox") cross-appeals.
 
 
 2
 This case arises out of Xerox's alleged contamination of plaintiffs' property beginning sometime in the early 1970s. Plaintiffs filed suit alleging violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., and various state-law causes of action including negligent damage to real property, nuisance, strict liability, and trespass. Xerox counterclaimed for CERCLA contribution pursuant to 42 U.S.C. § 9613, and asserted various counterclaims under state law. We review only the facts relevant to this appeal and cross-appeal.
 
 
 3
 Gussack Realty Co. owned property ("Gussack property" or "plaintiffs' property"), leased by General Bearing Corp., near a site once owned and operated by Xerox as a copier refurbishing plant at which solvents were frequently used. Following spills of hazardous waste on its property, Xerox entered into consent orders in 1984, 1990, and 1994 with the New York State Department of Environmental Conservation ("DEC") to investigate and remediate contamination on its property and on neighboring contaminated properties. Under the direction of the DEC, Xerox has engaged in substantial testing and remediation on its own property and on property downstream from its property. In the course of this investigation, and based on preliminary plume maps prepared by Xerox, Xerox drilled three monitoring wells on the Gussack property - largely upstream from the Xerox site - and determined that water from the wells met New York State drinking water standards. Nevertheless, plaintiffs retained experts who determined and testified at trial that the Gussack property had indeed been contaminated by Xerox. Because physics and common sense defy plaintiffs' claim that their upstream property could have been contaminated by Xerox, the thrust of the experts' testimony was that subsurface geological features, like fissures, fractures, rocks, and barriers, could force groundwater to flow in a different direction than surface water. Xerox has steadfastly contested this determination by plaintiffs' experts.
 
 
 4
 At the close of plaintiffs' case, the district court dismissed plaintiffs' strict liability and trespass claims. At the close of Xerox's case, the district court dismissed all of Xerox's counterclaims save for a CERCLA § 9613 contribution claim. The district court further dismissed plaintiffs' nuisance claim and, thus, plaintiffs' ability to collect punitive damages. The district court also denied plaintiffs' motion to amend their pleadings and include a claim for gross negligence. The remaining claims were submitted to the jury, which returned a special verdict awarding plaintiffs $1,083,585 for their CERCLA claim and $1,083,585 for their negligence claim.[1] It is unclear from the face of the special verdict form whether these awards were intended to be cumulative, although we note that the district court specifically instructed the jury not to award cumulative damages. The jury further determined that plaintiffs were entitled to past response costs but, by the parties' stipulation, the amount of such costs was to be set by the district court. The jury also found that Xerox was not entitled to CERCLA contribution under its § 9613 cross-claim.
 
 
 5
 The district court entered judgment for plaintiffs in the amount of $1,083,585, finding that the special verdict form authorized only a non-cumulative award. The district court set plaintiffs' past response costs at zero and denied plaintiffs' claim for prejudgment interest. The district court also awarded plaintiffs sanctions in the amount of $27,897.70 for discovery abuses by Xerox, representing 80% of plaintiffs' claimed expenses responding to the introduction of undisclosed expert testimony at trial. Finally, the district court sua sponte ordered plaintiffs "to indemnify Xerox to the extent of their net recovery in this action" for any response costs Xerox might incur in the event that the DEC requires Xerox to remediate pollution on plaintiffs' property in the future.
 
 
 6
 On appeal, plaintiffs claim that the district court erred by: (1) refusing to enter separate awards for their CERCLA and negligence claims; (2) refusing to award prejudgment interest; (3) setting plaintiffs' past response costs at zero; (4) dismissing plaintiffs' nuisance claim; (5) refusing to permit plaintiffs to amend their complaint to plead gross negligence in conformity with the evidence at trial; (6) sua sponte requiring plaintiffs to indemnify Xerox in the event Xerox is forced to remediate pollution on plaintiffs' property; and (7) reducing the sanctions against Xerox by 20% as measured against the costs plaintiffs incurred responding to Xerox's introduction of undisclosed expert testimony at trial. In its cross-appeal, Xerox claims that the district court erred by: (1) entering judgment on plaintiffs' CERCLA claim because they incurred no expenses compensable under CERLCA; (2) permitting plaintiffs' experts to testify in violation of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); (3) failing to dismiss plaintiffs' state-law claims as time-barred; and (4) sanctioning Xerox for introducing its undisclosed expert testimony at trial. We turn first to the merits of plaintiffs' CERCLA and negligence claims and the appeals and cross-appeals arising therefrom; we will consider each of the remaining claims seriatim.
 
 I. Plaintiffs' CERCLA and Negligence Claims
 
 7
 Upon review of the record, it is evident to us that plaintiffs misconstrue the nature of the remedies available under CERCLA. CERCLA provides that potentially responsible parties shall be liable for:
 
 
 8
 (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
 
 
 9
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .42 U.S.C. § 9607(a)(4). There is no dispute that Xerox is a potentially responsible party within the meaning of the statute. The question is whether plaintiffs incurred necessary costs of response as a result of Xerox's contamination of their property.
 
 
 10
 We note at the outset that CERCLA does not provide compensation to a private party for damages resulting from contamination. Instead, CERCLA permits a private party to be reimbursed for all or some of the costs already incurred in response to contamination. See id. § 9613(g)(2) (authorizing suit for recovery of costs pursuant to § 9607 "at any time after such costs have been incurred") (emphasis added). CERCLA further permits a declaratory judgment allocating future response costs between potentially responsible parties. See id. ("[T]he court shall enter a declaratory judgment on liability for response costs or damages . . . to recover further response costs or damages."). As the Ninth Circuit explained in Dant & Russell, Inc. v. Burlington Northern Railroad (In re Dant & Russell, Inc.), 951 F.2d 246, 249-50 (9th Cir. 1991), sections 9607 and 9613 "envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays, as well as a declaration that the responsible party will have continuing liability for the cost of finishing the job." Xerox argues that plaintiffs have incurred no expenses compensable under CERCLA, that CERCLA does not provide for a lump-sum payment of future expenses, and accordingly that plaintiffs' CERCLA claim fails as a matter of law. We agree.
 
 A. Past Response Costs
 
 11
 Prior to submitting the case to the jury, the parties stipulated that the jury would determine the availability of past response costs, and the district court would set the amount. The jury decided that response costs were appropriately awarded against Xerox, but the district court found that plaintiffs had not actually incurred any costs of response and set plaintiffs' CERCLA recovery for past response costs at zero.
 
 
 12
 On appeal, plaintiffs point to over $135,000 they claim to have spent responding to Xerox's contamination, and further argue that they should be able to recover certain of their attorney's fees incurred forcing Xerox to take responsibility for the contamination on the Gussack property. Xerox argues that all of these expenses were either unnecessary or were incurred only in anticipation of litigation and are therefore not recoverable. We review the district court's statutory interpretation as to the compensability of various response costs de novo. See National Loan Investors L.P. v. Town of Orange, 204 F.3d 407, 410 (2d Cir. 2000). But we review the district court's factual determinations deferentially. See Key Tronic Corp. v. United States, 511 U.S. 809, 820 n.14 (1994) ("As is customary in assessments of this sort, of course, trial courts will determine the exact amount of these [remediation] costs that is recoverable.").
 
 
 13
 CERCLA does not define "response costs." It provides that a polluter shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). "Respond" and "response" are defined as "remove, removal, remedy, and remedial action." Id. § 9601(25). And "remove" and "remedial action" are defined at length.[2] While compensable costs are broadly defined in the statute, they do not include expenses incurred solely in preparation for litigation unless they "significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs." Key Tronic Corp., 511 U.S. at 820. Such expenses can include "[t]racking down other responsible . . . polluters," which "increases the probability that a cleanup will be effective and get paid for." Id.
 
 
 14
 Xerox argues that because plaintiffs' experts conducted none of their own independent testing, their work should not be considered necessary costs of response. Xerox's interpretation of the statute is too narrow. CERCLA imposes no requirement that experts must conduct their own testing before their fees will be recoverable. We do not doubt that in many instances assessing the extent of pollution will necessarily include consultation with experts who have not conducted their own physical tests but are merely interpreting data gathered by others.
 
 
 15
 There is, however, a requirement that experts' fees be incurred not merely in preparation for litigation but as a necessary cost of remediating a site. The district court was asked, by stipulation of the parties, to determine as a factual matter the extent of plaintiffs' experts' fees that were recoverable response costs. The district court found that none of the fees were recoverable as they were not "'closely tied to the actual cleanup' of the Gussack Property so as to constitute a necessary cost of response. Plaintiffs were able to and did identify Xerox as a potentially responsible party without the expenditure of any of the requested consultation services." Reviewing for abuse of discretion, we cannot say that the district court erred in its determination. And plaintiffs' attorney's fees were even less directly related to the actual cleanup of the property and thus fail under the Key Tronic standard. Thus, prior to litigation, plaintiffs incurred no costs compensable under CERCLA.
 
 B. Future Response Costs
 
 16
 The jury's award of $1,083,585 for plaintiffs' CERLCA claim cannot be affirmed as compensation for future costs that plaintiffs will incur remediating the Gussack property. The proper remedy for future response costs is not a present lump-sum payment of anticipated expenses but instead a declaratory judgment award dividing future response costs among responsible parties. See 42 U.S.C. § 9613(g)(2); Bedford Affiliates v. Sills, 156 F.3d 416, 432 (2d Cir. 1998) (affirming district court's declaratory judgment award).
 
 
 17
 By awarding plaintiffs $1,083,585 for the "future costs of cleaning-up the Gussack Property," the district court provided a remedy not available under CERCLA. Moreover, since neither party on appeal has argued for a declaratory judgment apportioning future response costs, we decline to remand for reconsideration of this issue. Plaintiffs have not incurred any compensable expenses under CERCLA and the claim therefore fails as a matter of law. Accordingly, the judgment of the district court is reversed insofar as it is based on plaintiffs' CERCLA claim.
 
 
 18
 With the CERCLA claim dismissed, we see no basis for sustaining the district court's order that plaintiffs indemnify Xerox for future response costs Xerox might incur remediating plaintiffs' property. The district court's future indemnification award is therefore reversed and we need not consider plaintiffs' due process challenge to the award.
 
 A. Plaintiffs' Negligence Claim
 
 19
 Plaintiffs' state-law claim for negligent damage to real property provides an alternative basis on which to sustain the district court's judgment awarding plaintiffs $1,083,585. Xerox argues that plaintiffs' negligence claim is time-barred. We disagree.
 
 
 20
 In New York, the statute of limitations for plaintiffs' negligence claim is three years from the date of discovery. See N.Y. C.P.L.R. § 214-c (McKinney 1990). Xerox argues that David Gussack testified to knowing of the Xerox monitoring wells as of 1982 and that the statute of limitations should have begun running no later than the mid-1980s. This was a fiercely contested issue at trial and the district court ultimately submitted the question to the jury, which determined that plaintiff knew of, or should have known of the contamination as of May 1992. The district court did not err by submitting this factual question to the jury and we will not disturb the jury's determination on appeal. Thus, plaintiff's negligence claim was not time-barred.
 
 
 21
 Regarding the substance of the negligence award, the district court determined that permanent injury to real property in New York is measured by the lesser of the diminution of value of the property or the cost of remediating the contamination. See Scribner v. Summers, 138 F.3d 471, 472 (2d Cir. 1998) ("Scribner II"). Here, the lower value as determined by the jury was the cost of remediation, and the district court properly entered judgment on plaintiffs' negligence claim in the amount of $1,083,585.
 
 
 22
 Since plaintiffs' negligence claim is the proper basis for the district court's judgment, plaintiffs are entitled to prejudgment interest on their state-law claim. See N.Y. C.P.L.R. § 5001 (McKinney 1992 & Supp. 2000).[3] The district court found that plaintiffs were not entitled to prejudgment interest, holding: "[s]ince no money has been spent on cleaning up [the property], it would be inequitable to award prejudgment interest." However, section 5001 imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law. See Indu Craft, Inc. v. Bank of Baroda, 87 F.3d 614, 617 (2d Cir. 1996). The district court's denial of prejudgment interest is therefore reversed and the case remanded for determination of the amount of prejudgment interest due.
 
 II. Plaintiffs' Remaining Claims
 
 23
 Plaintiffs next argue that the district court erred by dismissing their nuisance claim. We review de novo the district court's ruling granting Xerox judgment as a matter of law. See Wilkinson v. Russell, 182 F.3d 89, 96 (2d Cir. 1999).
 
 
 24
 In Scribner v. Summers, 84 F.3d 554 (2d Cir. 1996) ("Scribner I"), we described the elements of a private nuisance claim in New York. They are:
 
 
 25
 (1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act. In particular, an invasion of another's interest in the use and enjoyment of land is "intentional in origin" when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct.
 
 
 26
 Id. at 559 (some internal quotation marks and citations omitted).
 
 
 27
 Plaintiffs cite Scribner I and argue that there was sufficient evidence for a jury to find intentional misconduct by Xerox. We disagree. In Scribner I, we held that defendant's conduct was "intentional in origin" where the defendant periodically cleaned sludge out of its concrete furnaces by hosing them down or, sometimes, by smashing the insides of the furnaces with a jackhammer. See id. at 556, 559. Plaintiffs' downstream property was contaminated by the runoff and we found a private nuisance on the basis that defendant's actions were substantially certain to contaminate plaintiff's property. See id. at 559.
 
 
 28
 In contrast, plaintiffs' case here relies on a complex and flatly counter-intuitive theory of causation: that deep fissures below the top soil would permit contaminants to flow in a different direction than the surface terrain suggests should be possible. While we defer to the jury's decision to accept the validity of the theory in its negligence determination, we agree with the district court that Xerox lacked the requisite intent - here defined as a substantial certainty of pollution to plaintiffs' property - to sustain plaintiffs' nuisance claim.
 
 
 29
 Our conclusion is supported by the nature of the solvent spills alleged in this case, which, almost without exception, resulted from simple and small-scale accidents or carelessness. We do not mean to trivialize the potential severity of such accidents, and CERCLA's strict liability regime ensures that the absence of fault does not insulate a potentially responsible party from liability. But for purposes of plaintiffs' state-law nuisance claim, evidence of these accidents, combined with a non-obvious theory of causation, would not permit a jury to infer that Xerox's actions were substantially certain to result in contamination to Gussack's property. This is simply not the kind of intentional conduct contemplated by New York State's nuisance law. Plaintiffs' nuisance claim was therefore properly dismissed.
 
 
 30
 The district court also refused to permit plaintiffs to amend their complaint to include a claim for gross negligence. We review the district court's decision only for abuse of discretion. See Vermont Plastics, Inc. v. Brine, Inc., 79 F.3d 272, 279 (2d Cir. 1996). Fed. R. Civ. P. 15(b) permits a district court to amend pleadings after trial to conform to the evidence produced at trial. Such a motion should be granted, however, only "if the party against whom the amendment is offered will not be prejudiced by the amendment." Hillburn v. Maher, 795 F.2d 252, 264 (2d Cir. 1986). Generally, introducing new claims for liability on the last day of trial will prejudice the defendant. In this case, plaintiffs moved to amend their pleadings at the close of the evidence, and only in response to the district court's dismissal of their nuisance claim. The district court did not abuse its discretion in denying the motion.
 
 
 31
 Finally, plaintiffs challenge the amount of the sanctions imposed against Xerox. At trial, Xerox elicited testimony from its expert witness on subjects not previously disclosed. By way of sanctions, the district court permitted plaintiffs to recover the reasonable costs of responding to the new testimony by taking emergency depositions. Plaintiffs submitted a bill for $34,872.13, which the district court accepted as valid. However, the district court reduced the amount of plaintiffs' recovery by 20% "based on plaintiffs' partial responsibility in causing defendant's actions." Given our deferential review, see Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000), we see no basis for disturbing the district court's decision in response either to plaintiffs' appeal or Xerox's cross-appeal.
 
 III. Admission of Expert Testimony
 
 32
 In its cross-appeal, Xerox argues that the district court erred in its application of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95 (1993), by admitting plaintiffs' expert testimony. We disagree.
 
 
 33
 Xerox's primary argument is that plaintiffs' experts failed to conduct their own tests and relied only on data provided by Xerox's own experts and the DEC. However, an expert may rely on data that she did not personally collect. The Federal Rules of Evidence specifically provide that an expert may rely on facts or data "perceived by or made known to the expert at or before the hearing." Fed. R. Evid. 703 (emphasis added). The expert need not have conducted her own tests. See B.F. Goodrich v. Betkoski, 99 F.3d 505, 524 (2d Cir. 1996) ("Dr. Brown did not personally visit the landfills or dig up any shovelfuls of waste, but he was not required to do so.").
 
 
 34
 Xerox also argues that plaintiffs' experts ignored, or were unaware of, plaintiffs' use of contaminants on the Gussack property. Xerox cites to the proposition that where an expert has entirely disregarded an alternative explanation, that expert's testimony is entitled to "zero weight" as a matter of law. Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997). Sheehan is inapposite. Plaintiffs' experts here were not trying to account for the otherwise inexplicable presence of contamination on plaintiffs' property. Instead, they provided theories describing how, in the abstract, it would be possible for contamination to flow from the Xerox site to the Gussack property. Xerox's remaining arguments are equally unpersuasive and the district court did not err by admitting plaintiffs' experts' testimony.
 
 Conclusion
 
 35
 For the foregoing reasons, the judgment of the district court awarding plaintiffs $1,083,585 is reversed insofar as it is based on plaintiffs' CERCLA claim, and affirmed insofar as it is based on plaintiffs' negligence claim. The district court's judgment denying plaintiffs' prejudgment interest is reversed and remanded for further proceedings consistent with this opinion. The district court's judgment awarding Xerox contribution for its future response costs is also reversed. In all other respects, the district court's judgment is affirmed.
 
 
 36
 No costs.
 
 
 
 Notes:
 
 
 *
 The Honorable Naomi Reice Buchwald of the United States District Court for the Southern District of New York, sitting by designation.
 
 
 [1]
 The special verdict form included, inter alia, the following questions and responses:
 1. PLAINTIFFS' CERCLA COST RECOVERY (§ 107) OR CONTRIBUTION (§ 113)
 . . . .
 Did the plaintiffs prove by a preponderance of the evidence that the plaintiffs have incurred or will incur the costs of clean-up in response to an actual threat to the public health or the environment? "Yes."
 . . . .
 What, if any, is the amount of future costs of clean-up that plaintiffs will incur in response to an actual threat to the public health or the environment? "$1,083,585."
 . . . .
 3. PLAINTIFFS' CLAIM OF NEGLIGENT DAMAGE TO REAL PROPERTY
 . . . .
 Reasonable Costs of Cleaning-up the Gussack Property[:] "$1,083,585."
 Decreased Value to the Gussack Property Due to the Existence of Contamination[:] "$1,235,000."
 
 
 [2]
 The terms "remove" or "removal" means [sic] . . . such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment . . . .
 42 U.S.C. § 9601(23).
 
 
 [3]
 est shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property . . . .
 N.Y. C.P.L.R. § 5001.