**VALJEAN MANUFACTURING INC. and Martin Gruber, Plaintiffs–Counter–Defendants–Appellees–Cross–Appellants,**

Fred Gruber, Counter–Defendant–Appellee.

v.

**MICHAEL WERDIGER, INC.,**
Defendant-Counterclaimant-Appellant-Cross-Appellee,

Richard Werdiger, Defendant.

Nos. 05–0939–CV(L), 05–1502–CV(XAP).

United States Court of Appeals, Second Circuit.

Dec. 6, 2005.

UPON DUE CONSIDERATION it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the United States District Court for the Southern District of New York (Baer, J.) is AFFIRMED IN PART AND VACATED IN PART and the case REMANDED for further proceedings consistent with this opinion.

Defendant-appellant Michael Werdiger, Inc. ("MWI") appeals from a judgment awarding damages for breach of contract to plaintiffs-appellees Valjean Manufacturing, Inc. ("Valjean") and Martin Gruber ("Gruber"). Valjean and Gruber cross-appeal, challenging the district court's award of interest to MWI and its calculation of the prejudgment interest owed to Valjean. We assume the parties' familiarity with the facts of the case, its procedural history, and the issues on appeal.

Most of the issues in this case center around an October 3, 1994 Manufacturing and Security Agreement ("MSA") between the parties. Where the parties' intent is unambiguously conveyed by the plain meaning of a contract, interpretation is a matter of law, which we review *de novo*. *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir.2000). We review the district court's conclusion regarding whether a contract is clear or ambiguous *de novo*. *Id.* If the contract is ambiguous, its meaning is a question of fact for the factfinder. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir.2000). "Following a bench trial, an appellate court may only set aside those findings of fact that are clearly erroneous, with due regard given to the district court's credibility determinations." *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 870 (2d Cir.1994).

MWI challenges the district court's award as it relates to (1) projected receipts from future sales, (2) shipping charges, (3)

Kenneth L. Bressler, Blank Rome, LLP (Douglas F. Broder, Kirkpatrick & Lockhart Nicholson Graham LLP, on the brief), New York, New York, for Defendant-Counter-Claimant-Appellant-Cross-Appellee.

Richard Keenan, Folger Levin & Kahn, LLP (Roger B. Mead, Folger Levin & Kahn, LLP, Alan Glickman, Schulte Roth & Zabel, LLP, on the brief), New York, New York, for Plaintiffs–Counter–Defendants–Appellees–Cross–Appellants.

PRESENT: Hon. JAMES L. OAKES, Hon. ROSEMARY S. POOLER, and Hon. SONIA SOTOMAYOR Circuit Judges.

## SUMMARY ORDER

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 6th day of December, Two thousand and five.

travel insurance and security, (4) total sales proceeds, and (5) credits for returned goods. We affirm the district court's judgment as to these questions because we find that MWI has failed to demonstrate any erroneous contract interpretation or clearly erroneous finding of fact in the court's resolution of these issues.

### 1. Post–Termination Sales of Indian–Manufactured Product

■ MWI also claims the district court erred by awarding Valjean damages based on post-termination sales of Indian-manufactured product. Section 12.2 of the MSA provided that if the MSA was terminated for cause, with Valjean the breaching party, MWI could sell any "Jewelry" still in its possession, provided it paid Valjean for the sale. "Jewelry" is defined in the MWA to include "jewelry, other than generic jewelry included as part of [the diamonds] manufactured by Valjean or its subcontractors for MWI for sale by [MWI]." The district court found that the Indian manufacturers were not subcontractors of Valjean. This would suggest that the Indian product was not "Jewelry," and therefore was not covered by MSA § 12.2. Also, the court found that MWI, not Valjean, was the breaching party, which further suggests that § 12.2 did not apply.

Although it is not clear to us whether the district court in fact awarded damages based on post-termination sales of Indian product, both parties assume it did. If the court awarded such damages, it might have concluded that post-termination payments were owed to Valjean on the basis of another MSA provision, possibly § 5.1, or an external agreement between the parties. Because we are unable to determine from the district court's opinion whether and on what basis it awarded damages based on the post-termination sales of Indian product, we remand for clarification.

### 2. Trade Show Expenses

■ Section 3.4 of the MSA provides that MWI will pay for advertising and trade-show expenditures through December of 1995 "and thereafter, as determined by" MWI. The district court acknowledged that the parties never negotiated a new agreement concerning advertising and trade show expenses, but determined that "it was reasonable for Valjean to presume that MWI would subsidize some of the expense." If the district court meant that Valjean could reasonably understand the MSA to entitle it to payments after 1995 absent any determination by MWI that such payments were appropriate, the court's decision was erroneous as a matter of law because the MSA provides otherwise. However, it is not clear from the record whether some conduct by MWI reflected its agreement to pay some or all of these trade show expenses after December 1995. Accordingly, we remand for a clarification of the court's reasoning on this point.

### 3. The 4% MWI Charge Awarded for Goods Manufactured in India

■ The district court held that MWI was entitled to deduct a 4% MWI Charge from sales proceeds on Indian-manufactured product. The MSA creates two different rates for MWI Charges: 8% for "Jewelry," and 4% for "Nova/MWI Diamonds," a category including generic jewelry. ("Nova" refers to Nova Stylings, a company that no longer exists and is not a party to these proceedings.) The district court concluded that Indian-manufactured jewelry was not "Jewelry" under the MSA because the Indian manufacturers were not agents of Valjean. It therefore must have concluded either that the Indian

product was "generic jewelry" or that the contract was silent and extrinsic evidence (which the court did not identify) supported a 4% MWI Charge. Because we cannot discern the basis of the district court's opinion, we remand for clarification on this point.

### 4. Salesperson Commissions

██ The MSA entitles Valjean to regular "Valjean payments" for the Valjean-manufactured products MWI sold, minus the "MWI Costs" (the costs incurred by MWI), and other deductions. Under § 5.1 of the MSA, MWI Costs include any sales commissions paid or payable. MWI asserts that the district court accepted Valjean's damages analysis and that this analysis did not include credit for some of the sales commissions that MWI was owed. It is not clear to us from the district court's opinion whether in fact it declined to award these damages, although both parties assume it did.

MWI claims the court accepted the accounting of MWI's expert Regan, which did not include some sales commissions. If the court accepted Regan's accounting on the theory that Regan properly rejected commissions that were payable but not yet paid, it erred, because the MSA requires payment for payable commissions. It is not clear, however, if the district court rejected as a matter of credibility MWI's claim that those commissions were payable. *See Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Because we can discern neither the amount of the award for sales commissions nor the basis for it, we remand for clarification on this question.

### 5. Diamond Valuation

██ The district court did not clearly err when it accepted Regan's method of valuing diamonds over MWI's. However,

the court's opinion appears internally inconsistent because although it claims to have accepted Regan's analysis, Regan's analysis found that MWI understated the costs of loose diamonds by $921,677. If MWI understated the costs of loose diamonds, it is not clear how the court determined that Valjean was entitled to $3,553,470 for the sale of loose diamonds. We remand so that the district court can explain this apparent inconsistency.

### 6. Charges and Adjustments

██ MWI challenges the district court's acceptance of Regan's assessment of the amounts of charges and adjustments due to Valjean. The district court found Regan's accounting to be correct, but did not explain why, which makes it difficult for us to review the court's findings. Accordingly, we remand for a clarification of why the court accepted Regan's analysis.

### 7. Interest Credits

██ On cross-appeal, Valjean challenges the district court's award of interest to MWI. The district court credited MWI with $4,850,149 for interest on cash advances to Valjean under § 2.4 of the MSA. It failed to explain, however, whether it believed that MWI's overpayments to Valjean qualified as cash advances (a finding that does not appear to comport with § 2.2, because § 2.2 only covers cash advances). If the court did not treat the overpayments as cash advances, it is not clear why MWI would be owed any interest. Indeed, the court appears to have simply taken MWI's calculation of interest from the MWI accounting, the same accounting that the court otherwise rejected. We remand so that the district court may explain its decision to award interest to MWI.

### 8. Prejudgment Interest

 The district court awarded prejudgment interest to Valjean starting from the date the complaint was filed. Although courts have wide discretion to determine a reasonable date from which to calculate prejudgment interest, *see Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir.1994), courts have no discretion to deny prejudgment interest entirely. *See Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 93 (2d Cir.2000). The district court here determined that MWI breached the contract when it failed to establish an accounting system, which clearly occurred before the date the complaint was filed. It is possible that the district court chose the date of filing because it concluded that Valjean had not asserted a breach of contract prior to that date. But because we cannot determine whether this was the basis for the district court's decision, we remand for clarification.

### 9. Conclusion

We have considered the remainder of the claims by both parties, and find them to be without merit. Upon remand, the district court is free to revisit and alter any conclusion or finding of fact it reached with respect to the issues we remand. From whatever final decision the district court makes, the jurisdiction of this Court to consider a subsequent appeal may be invoked by any party by notification to the clerk of this Court within ten days of the district court's decision, in which event the renewed appeal will be assigned to this panel. *See generally United States v. Jacobson,* 15 F.3d 19 (2d Cir.1994).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED IN PART AND VACATED IN PART and the case REMANDED for further proceedings consistent with this opinion.