Joseph A. GIBBONS, Plaintiff,

v.

NER HOLDINGS, INC., Defendant.

No. CIV. 3:95CV01243 (AVC).

United States District Court,
D. Connecticut.

Sept. 12, 1997.

Edward V. O'Hanlan, O'Rourke & O'Hanlan, New Canaan, CT, for plaintiff.

James Sconzo, Halloran & Sage, Hartford, CT, Andrew C. Oatway, Morisi & Assoc., Quincy, MA, for defendant.

### RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COVELLO, District Judge.

This is an action for damages in which plaintiff, Joseph Gibbons, seeks recovery for common law fraud, negligent misrepresentation, breach of contract and breach of an implied covenant of good faith and fair dealing.

The defendant, NER Holdings, Inc. ("NER"), now moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The issues presented are: 1) whether the plaintiff's tort claims are time-barred under the applicable statute of limitations; 2) whether the defendant is liable for fraud, 3) whether the defendant is liable for negligent misrepresentation; 4) whether the defendant is liable for breach of a stock subscription agreement; and 5) whether the defendant is liable for the breach of an implied covenant of good faith and fair dealing.

For the reasons hereinafter set forth, the court concludes that: 1) the plaintiff's tort claims and his contract claim, construed by the court as a tort action, are barred by the three-year statute of limitations; and 2) the plaintiff's claim for breach of an implied covenant of good faith and fair dealing is without substantive basis. Because the second, third and fourth issues are time-barred, the court does not reach a conclusion as to the defendant's alleged misconduct contained therein.

Accordingly, the court grants the defendant's motion for summary judgment and dismisses the action.

### FACTS

Examination of the complaint, affidavits, pleadings, exhibits, supplemental materials and the Rule 9 statements of material fact accompanying the motions for summary judgment, and the responses thereto disclose the following undisputed material facts.

The defendant, NER Holdings, Inc., is a privately held Delaware corporation doing business in Connecticut.

The plaintiff, Joseph A. Gibbons, is a Florida resident. In 1990, the plaintiff accepted the position of general manager of the defendant's Canadian operations in Toronto. The position provided that the plaintiff receive a fixed annual salary supplemented by annual performance bonuses that, pursuant to corporation policy, were paid in the following spring of each year.

On July 19, 1991, the defendant invited the plaintiff to purchase shares of the defendant's stock.[1] Together with the invitation to purchase stock, the defendant provided the plaintiff with the corporation's audited financial statements for the year ending December 31, 1990, the 1990 annual report to shareholders and the first quarter 1991 shareholder report. The defendant also stated that the plaintiff would receive additional financial statements for the period ending June 30, 1991 along with a separate explanation of how the corporation would value the stock. The defendant estimated that the approximately 78.80 [2] shares offered to the plaintiff would cost $33,096.

In September 1991, the defendant estimated the plaintiff would receive a 1991 performance bonus of $49,266 in 1992 and agreed to advance to the plaintiff $32,280 of his estimated 1991 bonus at that time. NER later paid the remainder of the plaintiff's 1991 bonus, $16,986, in the Spring of 1992, as was customary.

Pursuant to a stock subscription agreement dated September 30, 1991, the plaintiff finally agreed to purchase 76.02 shares of NER stock for $33,032. The plaintiff used the amount advanced to him from his 1991 bonus to purchase the stock.

In February 1993, eighteen months later, the president of NER informed the plaintiff and other management personnel that the corporation had discovered problems in the accounting department and that the corpora-

---

1. The invitation to purchase shares of NER stock was offered to the plaintiff and other "key executive employees."

2. The 78.80 shares of stock was an estimate of the amount of shares that would be offered to the plaintiff; however, the plaintiff ultimately only purchased 76.02 shares.

tion would suspend distribution of monthly financial statements until it could conduct a full investigation of the financial statements.

At about the same time, January or February 1993, the corporation fired the controller when it discovered deliberate overstatements in inventory values and the accounts payable balance. The errors had hidden deteriorating financial performance and resulted in an overstatement of retained earnings. The corporation also terminated relations with its accounting firm claiming the auditors failed to discover the controller's errors in the annual audit of financial records. Subsequently, the corporation retained a new accounting firm to reaudit the 1991 financial statements and audit the 1992 financial statements.

In December 1993, one year after claiming to have first discovered the accounting errors, the corporation disclosed to its shareholders revised, but unaudited, financial statements, which the plaintiff acknowledges receiving. A letter accompanying the statements summarized the known accounting errors contained within the 1991 statements. The letter further stated that the prior errors eliminated most of the common equity that management believed existed. The letter cautioned that the accompanying financial statements remained unaudited, but that there should be no reason to believe that they did not include all of the adjustments that an auditor would find appropriate.

In April 1994, the plaintiff voluntarily resigned from NER. His resignation triggered a buyback provision in the 1991 stock subscription agreement through which the corporation could elect to purchase the plaintiff's shares at fair market value.

On July 25, 1994, NER mailed to the plaintiff and the other shareholders a collection of financial statements, including statements for the first quarter of 1994 and audited financial statements for 1991–92 (consolidated) and 1993. The new accounting firm certified the revised 1991–92 consolidated financial statements and the 1993 financial statements. A letter accompanying the statements revealed that the unaudited statements previously released in December 1993 contained significant errors and that subsequent adjustments

resulted in an additional $6.5 million reduction in shareholder equity.

Sometime later, the corporation notified the plaintiff that it would exercise its option under the buyback provision to repurchase the plaintiff's shares. The plaintiff received little or no consideration from the corporation in exchange for the stock.

On October 11, 1994, Oatway informed the plaintiff that the 1991 accounting errors had also caused the corporation to over value the stock sold to the plaintiff by approximately $216 per share. As a result, the plaintiff had paid $16,453 more than the actual book value for his 76.02 shares.

Using the same revised 1991 financial data, Oatway also informed the plaintiff that the corporation had improperly calculated the plaintiff's $49,266 1991 bonus. Using the revised financial statements, the corporation concluded that the plaintiff was entitled to a bonus of only $15,838 and that he had received $33,428 more than he should have received.

On June 23, 1995, forty-five months after receiving the allegedly fraudulent information, the plaintiff instituted this action to recover for the alleged misrepresentation regarding the corporation's financial condition and for the losses he sustained when the corporation revalued the stock using revised financial data. By way of a counterclaim, the defendant is seeking to recover the overpaid bonus paid to the plaintiff. On November 27, 1996, the defendants filed the within motion for summary judgment.

### STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. Proc.; *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2nd Cir.1992), *cert. denied,* 506

U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2nd Cir.1990), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780 (2nd Cir.1992).

## DISCUSSION

### I. Tort Claims: Negligent Misrepresentation & Common Law Fraud

The defendant first claims that the plaintiff's claims for fraud and negligent misrepresentation are untimely pursuant to Connecticut's three-year statute of limitations for tort claims.[3] In response, the plaintiff claims that the statute of limitations does not bar his tort claims. First, the plaintiff argues that the theory of "inquiry notice"[4] tolls the application of the statute of limitations. Second, the plaintiff argues that the defendant's fraudulent concealment of the accounting errors tolls the application of the statute of limitations.

■ In Connecticut, allegations of common law fraud and negligent misrepresentations must be brought "within three years from the date of the act or omission complained of." Conn. Gen.Stat. § 52–577. When applying this statute, the courts in this jurisdiction have held that " § 52–577 is an occurrence statute, meaning that the time period within which the plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." *S.M.S. Textile Mills, Inc.* v. *Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn.App. 786, 790, 631 A.2d 340 (1993). In reaching its conclusion, the *Textile Mills* court relied upon the decision in *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 541 A.2d 472 (1988), in which the Connecticut supreme court held that the language selected by the legislature in drafting § 52–577 "precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." (citing *Prokolkin v. General Motors Corp.*, 170 Conn. 289, 294–97, 365 A.2d 1180 (1976) ).

■ When § 52–577 is applied to claims of securities fraud, the "act or omission complained of" occurs when the investor receives documents containing the false or misleading information. *In re Colonial Limited Partnership Litigation*, 854 F.Supp. 64, 90 (D.Conn.1994) (citing *Halbrecht v. Prudential Bache Properties. Inc.*, 1992 WL 336757, at *4, 1991 U.S. Dist. LEXIS 20142, at *15 (D.Conn.1992)); *See also Miller v. Grigoli*, 712 F.Supp. 1087, 1092–93 (S.D.N.Y.1989) (holding that when Conn. Gen.Stat. § 52–577 is applied to common law securities fraud claim, the limitations period commences on the date the plaintiff received materials allegedly containing omissions and misrepresentations.)

In the present case, the plaintiff acknowledges receiving the allegedly false or misleading information on July 19, 1991. The plaintiff commenced his action on June 23, 1995, four years after receiving the allegedly false of misleading information and almost one year after the expiration of the three-year statute of limitations. Accordingly, unless the plaintiff can demonstrate a basis to toll the statute of limitations, the plaintiff's cause of action is untimely.

### A. Inquiry Notice

■ The plaintiff first seeks to toll the statute of limitations under a theory of "inquiry notice." In *In re Integrated Resources*

---

3. "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52–577.

4. The plaintiff claims he was never put on "inquiry" notice, meaning that he was never in possession of "facts which in the exercise of reasonable diligence should have led to actual knowledge" of a claim for fraud while NER continued to promulgate financial statements that were inaccurate. *See In Re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation*, 815 F.Supp. 620, 637 (S.D.N.Y.1993).

*Real Estate Limited Partnerships Sec. Lit.,* 815 F.Supp. 620 (S.D.N.Y.1993), the court, applying the equitable principle of "inquiry notice" to a federal securities fraud claim, stated that "the statute of limitations for securities fraud claims begins to run when . . . the plaintiff is placed on 'inquiry notice,' to wit, when the plaintiff has 'knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge.' *Phillips v. Levie,* 593 F.2d 459, 462 (2d Cir.1979)." *In re Integrated Resources Real Estate Limited Partnerships Sec. Lit.,* 815 F.Supp. 620, 637 (S.D.N.Y.1993).

The plaintiff argues that the court should toll the statute of limitations under this equitable theory since he did not have "inquiry notice" of the alleged misrepresentations. Specifically, the plaintiff claims that because he was never in possession of facts which in the exercise of reasonable diligence should have led to actual knowledge of a claim for fraud, the statute of limitations period could not begin to run. Only upon receiving notice of the errors, the plaintiff argues, could the statute of limitations period begin to run.[5]

However, this court concludes that the present case can be distinguished from *Integrated Resources.* Specifically, *Integrated Resources* addressed tolling of the *federal* statute of limitations applicable to a *federal* securities fraud claim brought pursuant to Section 10(b) of the federal Securities Exchange Act of 1934. *See Integrated Resources,* 815 F.Supp. 620 (S.D.N.Y.1993). The present case, on the other hand, involves common law claims of fraud brought pursuant to Connecticut law. The applicable law governing this matter is state law, not federal. The present case is subject to the limitations imposed by state law and therefore unaffected by those theories of law applicable to federal causes of action.

In Connecticut, the statute of limitations for tort claims will not be extended until such time as the cause of action has accrued or the injury has occurred. *See Fichera v. Mine Hill Corp.,* 207 Conn. 204, 212, 541 A.2d 472

(1988). The plaintiff's argument, disguised under the theory of "inquiry notice," seeks to delay the start of the limitations period in the precise manner that the *Fichera* court held was unavailable under § 52–577, that is, he seeks to delay the start of the limitations period until the time at which he knew a cause of action had accrued. This argument is contrary to the holding in *Fichera* and subsequent related cases.

Further, the plaintiff fails to provide any argument that *Integrated Resources* and the theory of "inquiry notice" has been or should be applied to the Connecticut statute of limitations applicable here. Unless the plaintiff demonstrates a basis to apply "inquiry notice" within this jurisdiction, this court is not bound by *Integrated Resources* and its application of "inquiry notice" to toll § 52–577 in the present situation.

Based upon the foregoing, the court concludes that the plaintiff's first argument for tolling the statute of limitations is without basis.

**B.  Fraudulent Concealment**

The plaintiff next argues that the court should toll the statute of limitations because the defendant fraudulently concealed the plaintiff's cause of action. In support of his argument, the plaintiff claims that: 1) he was unaware that the problems for which the audit was conducted, arose from inaccurate financial statements and was therefore also unaware that the 1991 financial statements provided to him earlier were incorrect; and 2) the defendant intentionally failed to fully divulge to the plaintiff the problems with the financial statements. In response, the defendant argues that the plaintiff fails to establish the essential elements of fraudulent concealment and is therefore not entitled to toll the statute of limitations.

Section 52–595 of the Connecticut General Statutes states: "if any person, liable to an action by another, fraudulently conceals from

---

**5.**  The plaintiff points out that "once NER learned of the inaccurate financial information, the limitations period might have begun to run, except for NER's active concealment from Gibbons of what was learned when it fired the controller."

In other words, tolling is appropriate only up to the time upon which NER learned of the errors in January 1993. Thereafter, the defendant's alleged fraudulent concealment provides a basis to toll that statute of limitations.

him the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

■ In *Bound Brook Ass'n v. Norwalk,* 198 Conn. 660, 504 A.2d 1047 (1986), the court stated:

> to establish that the defendants had fraudulently concealed the existence of their cause of action and so had tolled the statute of limitations, the plaintiffs had the burden of proving that the defendants were aware of the facts necessary to establish the cause of action, and that they had intentionally concealed those facts from the plaintiffs. The defendants' actions must have been directed to the very point of obtaining the delay in filing the action of which they afterward seek to take advantage by pleading the statute.

*Bound Brook Ass'n v. Norwalk,* 198 Conn. 660, 665–666, 504 A.2d 1047 cert. *denied,* 479 U.S. 819, 107 S.Ct. 81, 93 L.Ed.2d 36 (1986) (citations omitted).

■ Further, in *Bartone v. Robert L. Day Co., Inc.,* 232 Conn. 527, 656 A.2d 221 (1995), the court stated that to prove fraudulent concealment, the plaintiff must demonstrate:

(1) a defendant's actual awareness, rather than imputed knowledge, of facts necessary to establish the plaintiff's cause of action;

(2) the defendant's intentional concealment of these facts from the plaintiffs; and

(3) that [the] defendant's concealment of the facts [was done] for the purpose of obtaining delay on the plaintiff's part in filing a complaint on their cause of action.

*Bartone v. Robert L. Day Co., Inc.,* 232 Conn. 527, 533, 656 A.2d 221 (1995).

In the present case, the plaintiff states that he had no knowledge of a cause of action since the defendant never suggested that NER shares would be valued differently by the accounting errors or that forthcoming,

corrected audits would restate the 1991 corporation value. Furthermore, the plaintiff states it would be impossible to "divine from news of depleted equity in 1993 that a claim for fraud exists from a stock purchase in 1991."

The plaintiff also argues that his own ignorance of the accounting errors and their resulting effect on the 1991 financial statements together with the intentional concealment of the information material to his claim, satisfy the elements of fraudulent concealment. He argues that since the corporation was aware of the implications of the errors in January 1993, failure to divulge information to the plaintiff after that date represents an intentional effort to keep the plaintiff ignorant of his cause of action. The plaintiff argues that he received no explanation or detail of the accounting errors.

For the following reasons, the court concludes that the plaintiff fails to demonstrate facts sufficient to establish the defendant's fraudulent concealment. Specifically, the court concludes that the plaintiff fails to demonstrate each of the elements of fraudulent concealment set forth in *Bartone* that must be shown to exist in order to permit tolling under § 52–595.[6]

■ The evidentiary burden to establish fraudulent concealment in Connecticut is not an easy hurdle to overcome. A plaintiff will not prove fraudulent concealment through evidence that it was "more likely than not that the defendant had concealed the cause of action." *Bartone v. Robert L. Day Co., Inc.,* 232 Conn. 527, 533, 656 A.2d 221 (1995). Fraudulent concealment must be "strictly proven" with "clear, precise and unequivocal evidence." *Connell v. Colwell,* 214 Conn. 242, 252, 571 A.2d 116 (1990) (quoting *Puro v. Henry,* 188 Conn. 301, 308, 449 A.2d 176 (1982)). Moreover, the defendant's conduct must be "directed to the very point of obtaining a delay." *Bartone,* 232 Conn. at 534, 656 A.2d 221 (citing *Lippitt v. Ashley,* 89 Conn. 451, 480, 94 A. 995 (1915)). If the plaintiff's

---

**6.** The plaintiff argues that "both elements of fraudulent concealment—ignorance by [the plaintiff] and intentional concealment by [the defendant]" exist, and thus the statute of limitations should be tolled. As the defendant states and the court agrees, the plaintiff fails to establish that "anything NER did was with the specific intent to induce delay on the part of the plaintiff in asserting his cause of action."

evidence is merely "colorable" or "not significantly probative," the court should grant *summary* judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986).

### 1. Actual Awareness

■ Under *Bartone,* a plaintiff must establish that the defendant had actual awareness, rather than imputed knowledge, of facts necessary to establish the plaintiff's cause of action. *Bartone v. Robert L. Day Co., Inc.*, 232 Conn. 527, 533, 656 A.2d 221 (1995). The plaintiff here contends that NER was aware of and responsible for the actions of its controller, not by actual knowledge, but through application of the doctrine of *respondeat superior* (ie. that the wrongful acts of the controller are imputed to the defendant-employer).

However, the plaintiff's argument that knowledge is established through the controller's conduct falls short of the *Bartone* standard that requires the plaintiff prove that NER had "actual awareness ... of facts necessary to establish the plaintiff's cause of action." *Bartone,* 232 Conn. at 533, 656 A.2d 221.

The defendant acknowledges actual awareness of the controller's misconduct in January 1993. The plaintiff, on the other hand, fails to produce evidence of the defendant's awareness prior to that date. Therefore, the plaintiff's claim of fraudulent concealment, if the remaining elements are satisfied, may only apply to events occurring after January 1993.

### 2. Intentional Concealment For Purposes of Obtaining Delay

A plaintiff alleging fraudulent concealment must also establish that the defendant intentionally concealed from the plaintiff facts necessary to establish his cause of action, and did so for the purpose of obtaining a delay in the plaintiff's cause of action. *Bartone v. Robert L. Day Co., Inc.;* 232 Conn. 527, 533, 656 A.2d 221 (1995).

Although the parties dispute the extent to which the defendant divulged information, the plaintiff admits that, by January 1993, he knew there was some confusion about the financial statements. The defendant also admits that between January and December 1993, the corporation did not distribute any financial statements to its shareholders and managers. According to the defendant, the corporation did not divulge additional information because it believed the financial information contained errors. However, when the plaintiff was questioned as to why he believed the defendant had discontinued distributing financial statements, he responded that it was because "there was a problem somewhere ... it was [the plaintiff's] impression there was a problem, otherwise, we would be receiving financial statements."

The plaintiff's argument is inconsistent. The complaint alleges "concealment." However when deposed, the plaintiff admitted that he suspected the financial information was withheld because of the errors it contained. In support of the issue now before the court, the plaintiff argues that the concealment was for purposes of obtaining delay. The plaintiff's admission that the information was withheld because it was incorrect does not coincide with prior and subsequent statements that it was withheld for purposes of fraudulently concealing the plaintiff's cause of action.

The nature and inconsistency of the plaintiff's argument demonstrates that he is without "clear, concise and unequivocal evidence" of facts sufficient to establish the defendant's fraudulent concealment. The plaintiff fails to produce any evidence, apart from speculation, that the defendant, having actual knowledge of the plaintiff's cause of action, intentionally concealed facts crucial to the cause of action *for purposes of obtaining delay in asserting the cause of action.* Rather, by the plaintiff's own admission, the concealment was because the defendant itself did not have all the information about the financial errors at issue.

Therefore, based upon the foregoing, the court concludes that the plaintiff has failed to establish the essential elements of fraudulent concealment, and is thus not entitled to toll the statute of limitations.

## II. Breach of Contract

The defendant next claims that the plaintiff's claim for breach of contract is without substantive basis. Specifically, the defendant argues that here the elements of breach of contract do not exist. In response, the plaintiff argues that the defendant breached provisions of the stock subscription agreement by: 1) failing to value the stock using generally accepted accounting principles "consistently applied;" and 2) failing to exercise its right to repurchase the shares within the time limit specified within the stock subscription agreement.

■ With respect to the plaintiff's second argument, that the defendant's alleged failure to repurchase the plaintiff's stock within some specified time, the court concludes that the complaint contains no reference to this alleged breach of the contract. The plaintiff may not argue that a breach of contract has occurred with respect to matters not pleaded and therefore not before the court. Accordingly, the plaintiff may not use the defendant's alleged failure to repurchase stock within a specified time to sustain the breach of contract claim.

In addition, as to the alleged defendant's failure to repurchase the stock within a specified time, there is neither evidence suggesting nor argument demonstrating that the alleged failure to comply with specified time limits injured the plaintiff.

■ With respect to the plaintiff's first argument supporting his contract claim, that the defendant failed to value the stock using generally accepted accounting principles consistently applied, the court similarly concludes that the plaintiff's argument is without basis.

Count three of the complaint states:

The conduct of defendant, in providing Mr. Gibbons and other investors with fraudulent information and/or information, that Defendant knew, or in the exercise of diligence, should have known was not accurate, and, further, in valuing the stock under [the stock subscription agreement] in accordance with financial statements that differed drastically from and were inconsistent with those which had been provided to Mr. Gibbons and other investors for the purposes of their decision to invest, and upon which they relied in making their decision to invest, constitutes a breach of the [stock subscription agreement] entitling Mr. Gibbons to seek damages, and, specifically, rescission of the agreement and return of his funds *in toto*, with interest.

The court concludes that the plaintiff's damages in this case result not from a breach of the stock subscription agreement, but from the effects of the controller's actions. The complaint alleges that the defendant failed to detect the controller's actions. However, the defendants alleged wrongdoing is not in violation of the contract, which states that the price of the stock will be

the net stockholder's equity per share, after deducting the full liquidation preference of any then outstanding shares of stock ... having a liquidation preference, all as reflected in the consolidated balance sheet ... as of the Valuation Date, less the amount of any distributions with respect to such Share made by the Corporation since the Valuation Date. Any such determination shall be made in accordance with generally accepted accounting principles consistently applied, and appropriate adjustments shall be made for any split-ups or combinations of shares subsequent to the Valuation Date. (Emphasis added).

The plaintiff does not argue that the accounting formula or method of calculating share price was incorrect, but rather that the use of "re-stated financial information" is unfair. Fairness is not considered by the contract, which sets forth only a general accounting methodology for determining share price.

The plaintiff's contract claim involves issues that are separate and apart from the contract terms. The contract claim involves issues of fairness and may be more appropriately considered as an action in tort. Therefore, in light of the plaintiff's argument and allegations, the court construes the plaintiff's contract claim as an action in tort.

That the court now construes the plaintiff's breach of contract claim as an action in tort

does not, however, entitle the plaintiff to move forward with his claim because it is untimely under Connecticut's statute of limitations for tort claims, Conn. Gen.Stat. § 52–577.

The court concludes that the plaintiff can not maintain his claim for events arising from the accounting valuation of the stock.

## III. Breach of Covenant of Good Faith and Fair Dealing

The defendant next claims that the plaintiff's claim of breach of an implied covenant of good faith and fair dealing is without substantive basis. Specifically, the defendant argues that the plaintiff fails to demonstrate the requisite dishonest purpose necessary to establish a lack of good faith. In response, the plaintiff argues that the combination of the defendant's failure to exercise its rights under the repurchase agreement until after the three-year anniversary of the original purchase and the defendant's failure to treat other employee-shareholders in the same manner constitutes sufficient evidence of bad faith.

In *Habetz v. Condon,* 224 Conn. 231, 618 A.2d 501 (1992), the court held that "[e]very contract carries an implied covenant of good faith and fair dealing that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Habetz,* 224 Conn. at 238, 618 A.2d 501 (1992). Bad faith, defined as the "absence of good faith," *Buckman v. People Express,* Inc., 205 Conn. 166, 171, 530 A.2d 596 (1987), involves both "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz,* 224 Conn. at 237, 618 A.2d 501. More appropriately, "bad faith implies more than mere negligence; it involves a dishonest purpose." *Habetz,* 224 Conn. at 237, 618 A.2d 501.

In the present case, the plaintiff fails to demonstrate that the defendant was motivated by "fraudulent intent," or "a design to mislead," or was acting under some "sinister motive." Neither the allegations that the plaintiff had been treated differently from other employees or shareholders nor the alleged delay in purchasing the shares of stock until after the three-year anniversary of the stock purchase provide evidence establishing the requisite "fraudulent intent," "design to mislead" or "sinister motive." Accordingly, based upon the foregoing, the court concludes that the plaintiff's claim for breach of an implied covenant of good faith and fair dealing is without substantive basis, and therefore must be dismissed.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (no. 33) is granted.