**Ralph BELLO and Vera Associates Limited Partnership,**
**Plaintiffs,**

v.

**BARDEN CORPORATION, Defendant.**

**No. CIV. 3:01CV01531(AWT).**

United States District Court,
D. Connecticut.

Jan. 7, 2002.

Ikechukwu Umeugo, Umeugo & Assoc., West Haven, CT, for Plaintiffs.

Joseph A. Wellington, Carmody & Torrance, Waterbury, CT, for Defendant.

### RULING ON MOTION TO DISMISS

THOMPSON, District Judge.

The plaintiffs have filed a two-count complaint, seeking recovery of certain costs or losses incurred or suffered by them and related to an "environmental cleanup" of their property performed by the United States Environmental Protection Agency during 1998. The defendant moves to dismiss both counts pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the defendant's motion to dismiss is being granted, but with leave to amend the complaint to include one claim being asserted by the plaintiffs but not included in the complaint, namely, a claim for recovery of water usage fees.

### I. *Factual Background*

The plaintiffs are the owners of property located at 16–20 Elm Street in West Haven Connecticut. The plaintiffs allege that, during the period between January 9, 1984 and October 31, 1997, the plaintiffs rented this property to Robert Pattison, Sr. and certain corporations owned and/or controlled by him, namely, National Oil Services, Inc., National Oil Recycling and Environmental Services, Inc., National Tank and Construction Co., Inc., Bell Habor Environmental, Inc., and Atlantic Environmental Laboratory, Inc. (collectively, "National Oil").

The plaintiffs allege that, during the same period, the defendant delivered to National Oil 587,668 gallons of hazardous waste, contaminated waste oil and/or oil sludge or waste oil, which accumulated in various tanks and containers on the plaintiffs' property. On or about January 8, 1998, hazardous substances accumulated on the property spilled and polluted the property and the Long Island Sound.

The United States Environmental Protection Agency ("EPA") conducted a clean-up of the property between January 8, 1998 and June 30, 1998, at a cost in excess of $1,134,000. The EPA initiated proceedings under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601 *et seq.*, as amended ("CERCLA") to recover the costs it incurred in cleaning up the property. On October 1, 1998, the EPA placed a lien on the plaintiffs' property in the amount of $1,134,000.

The EPA also sought to recover its clean-up costs from the defendant and the other persons who had delivered hazardous substances to National Oil. On August 17, 2001, the EPA commenced an action in this district against the defendant and some 400 other parties that had disposed of or arranged for the disposal of hazardous substances at National Oil, seeking to recover its response costs under CERCLA. Many of the defendants in that action, including the defendant, have accepted the EPA's settlement offer and agreed to pay their share of the agency's response costs. On September 14, 2001, a consent decree (the "Consent Decree") memorializing the settlement was lodged with the court. *See United States of America v. A–1 Auto Service, Inc. et al.,* Civil No. 3:01CV01567 (AHN) (D.Conn.). On December 19, 2001, the EPA filed a motion to enter the consent decree.

Paragraph 20 of the Consent Decree states, in relevant part, that:

The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendants and the Settling Federal Agencies are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Past Response Costs.

(Doc. 16, Ex. C at 7.) The definitions section of the Consent Decree provides that "Past Response Costs" shall mean "all costs, including but not limited to direct and indirect costs, that EPA or DOJ on behalf of EPA has paid at or in connection with the site through May 15, 2001, plus accrued Interest on all such costs through such date." *Id.* at 2. Thus, once the Consent Decree is entered, the defendant will have protection, pursuant to CERCLA § 113(f)(2), from contribution for matters addressed in the settlement.

Count One of the plaintiffs' complaint is brought under CERCLA, 42 U.S.C. §§ 9607 and 9613. Count Two of the plaintiffs' complaint asserts a state law claim for "intentional and/or reckless" conduct. In their complaint, the plaintiffs seek the following amounts as damages for the following injuries or losses:

(i) $125,910 for damage to an Abcor system;

(ii) $34,195.60 for damage to oil tanks;

(iii) $420,000 as damages for loss of rental income;

(iv) an unspecified amount as damages in connection with two failed attempts to sell the property for $1,750,000;

(v) $2,680 as damages for costs to be incurred in the future in connection with the cleanup of debris left on the property at the end of the EPA cleanup;

(vi) $12,000 as damages for costs to be incurred in the future in connection with testing the pressure in the oil tanks; and

(vii) $1,150 as damages for investigative costs incurred to determine the ex-

tent of hazardous materials on the property.

In addition, the plaintiffs assert that they are entitled to recover the respective amounts of $398.87 and $501.50, paid by them for water usage fees as part of the EPA cleanup. This assertion is made in the plaintiffs' opposition to the motion to dismiss, but no such allegation is made in the complaint. The plaintiffs contend that the EPA forwarded to their counsel a letter concerning, *inter alia,* the damage to the oil tanks and the water usage fees, in which the EPA stated the following:

> Your client requests that EPA return the tanks to their original condition. In performing the removal work, it was determined that the only way to safely ensure optimum removal of the hazardous substances from the tanks was to create larger access ways than the tanks previously had. The access ways created were necessary to abate the hazardous substance threat and were considered a necessary part of EPA's response action. The water usage that your client contends that EPA is responsible for falls into the same category.

(Doc. 18, Ex. 1 at 2.)

Finally, the record shows, and it is not disputed, that plaintiff Bello participated in a meeting with the EPA on June 11, 1998, at which he made the following statements:

> In September of 1996, I sent two registered letters to [the Connecticut Attorney General], informing him of the accumulation of hazardous materials being stored on my property in the storage tanks and in drums, and that I was very concerned.
>
> .    .    .    .    .
>
> In November of 1996, National Oil Services, Inc., ... signed an agreement to empty all of the storage tanks of water solubles, waste oils and sludge and to comply with the laws of the DEP ....
>
> ... Suddenly, in June of 1997, they failed to meet the requirements of the agreement they had signed ....
>
> In September of 1997, I immediately started eviction proceedings against National Oil Services ....
>
> On September 17, 1997, I hired Atlantic Petroleum, Inc. from New Jersey to stick the tanks and take samples of all of the storage tanks and analyze what was in the tanks. At that time, there was 423,000 gallons of waste oil and sludge.
>
> On October 15, 1997, [the Department of Environmental Protection ("DEP")] made more inspections to retain lists of where the waste oil was being picked [up] and shipped ....

(Doc. 10, Ex. B at 17–18.)

## II.  *Standard of Review*

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn. 1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). "The issue on

a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683).

However, in deciding a motion to dismiss, "a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Lofton v. Bureau of Prisons*, 1995 WL 341565, at *1, 57 F.3d 1077 (9th Cir. June 8, 1995); *Pani, et al. v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998) ("It is well established that a district court may rely on matters of public record in deciding a Motion to Dismiss under Rule 12(b)(6), including case law and statutes.") (citations omitted).

### III. *Discussion*

#### A. *Count One—CERCLA*

The plaintiffs set forth two claims in Count One. The first claim is brought under CERCLA § 107(a), i.e., 42 U.S.C. § 9607(a), and the second is a claim for contribution brought under CERCLA § 113(f)(1), i.e., 42 U.S.C. § 9613(f)(1).

CERCLA § 107 makes certain categories of persons liable for specified costs incurred and damages resulting from a release or threatened release into the environment of a hazardous substance. 42 U.S.C. § 9607(a). Such persons are liable, however, only for the following costs:

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C.A. § 9607(a) (West 2001).

Where a claim for costs is based on clause (B), CERCLA limits a private party's recovery to the "necessary costs of response" that are incurred "consistent with the national contingency plan." 42 U.S.C.A. § 9607(a) (West 2001). To show that response costs were necessary under CERCLA, a plaintiff must show: (1) that the costs were incurred in response to a threat to human health or the environment, and (2) that incurrence of the costs was necessary to address that threat. *Carson Harbor Village Ltd. v. Unocal Corp.*, 227 F.3d 1196, 1202–03 (9th Cir. 2000); *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, 1277 (D.Del.1987).

Pursuant to CERCLA § 113(f)(1), a person may seek contribution from any other person who is liable or potentially liable under CERCLA § 107(a). To state a claim for either full cost recovery or contribution under CERCLA, a plaintiff must allege that:

(1) Defendant fits within one of the four classes of responsible parties outlined in § 107(a).

(2) The site is a facility.

(3) There is a release or threatened release of hazardous substances at the facility.

(4) The plaintiff incurred costs responding to the release or threatened release.

(5) The costs and response actions conform to the National Oil and Hazardous Substances Pollution Contingency Plan.

*Bedford Affiliates v. Sills,* 156 F.3d 416, 427 (2d Cir.1998). *See also Prisco v. A.D. Carting Corp.,* 168 F.3d 593, 602–3 (2d Cir.1999) ("The elements of an action under § 113(f)(1) are the same as those under § 107(a).").

■ Under CERCLA, a private party cannot recover for property damage resulting from the release of a hazardous substance. *Exxon Corp. v. Hunt,* 475 U.S. 355, 359, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986) ("Superfund money is not available to compensate private parties for economic harms that result from discharges of hazardous substances."); *Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 91 (2d Cir. 2000) ("CERCLA does not provide compensation to a private party for damages resulting from contamination"). "Congress in enacting CERCLA clearly manifested an intent not to provide compensation for economic losses or for personal injury resulting from the release of hazardous substances." *Artesian Water Co.,* 659 F.Supp. at 1285–86 (noting that Congress explicitly rejected an earlier version of the bill that authorized the recovery of economic losses and loss due to personal injury, including any injury to real or personal property).

This limitation on what can be recovered under CERCLA is reflected in the definition of the term "response," which is found at 42 U.S.C. § 9601. It provides as follows:

> The terms "respond" or "response" means remove, removal, remedy, and remedial action; ... all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto.

42 U.S.C.A. § 9601(25) (West 2001). The terms "remove" and "removal" are, in turn, defined as follows:

> The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C.A. § 9601(23) (West 2001). Also, the terms "remedy" and "remedial action" are defined as follows:

> The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavation, repair or replacement of leaking containers, ... and any monitoring reasonably required to assure that

such actions protect the public health and welfare and the environment.

42 U.S.C.A. § 9601(24) (West 2001).

Thus, CERCLA's cost recovery provisions can only be used to obtain compensation or reimbursement for costs of cleaning up actual or threatened releases of hazardous substances into to the environment.

### 1. *Claim Under 42 U.S.C. § 9607(a) (CERCLA § 107(a))*

■■■ One of the claims set forth in Count One is a claim under CERCLA § 107(a). However, where the party seeking to recover response costs is itself a potentially responsible party, it may not bring suit under § 107(a). *Bedford Affiliates*, 156 F.3d at 423–24; *Durham Mfg. Co. v. Merriam Mfg. Co.*, 128 F.Supp.2d 97, 101 (D.Conn.2001). "Such a plaintiff is limited instead to an action for contribution from other potentially responsible parties under CERCLA § 113(f)(1)." *Prisco*, 168 F.3d at 603.

The plaintiffs allege that they are, and were at all relevant times, the owners of the property where the release of hazardous materials occurred. As owners of that property, the plaintiffs are potentially responsible parties under CERCLA. *See* 42 U.S.C. § 9607(a)(2); *see also Prisco*, 168 F.3d at 603 ("Prisco being the owner at all relevant times of the Prisco landfill, has the characteristics of a potentially responsible party within the meaning of § 107(a)(2).").

Accordingly, Count One should be dismissed to the extent it purports to state a claim under CERCLA § 107(a).

### 2. *Claim Under 42 U.S.C. § 9613(f)(1) (CERCLA § 113)(f)(1)*

The other claim set forth by the plaintiffs in Count One is a contribution claim under CERCLA § 113(f)(1). The costs and losses for which the plaintiffs seek to recover from the defendant can be grouped into five categories: (1) property damage, i.e., $125,910 for damage to an Abcor system, and $34,195.60 for damage to oil tanks; (2) economic losses, i.e., $420,000 as damages for loss of rental income, and an unspecified amount as damages for losses arising out of lost opportunities to sell the property; (3) costs to be incurred in the future, i.e., $2,680 for removal in the future of debris left at the end of the EPA cleanup, and $12,000 for testing the pressure in the oil tanks in the future; (4) investigative costs, in the amount of $1,150, incurred to determine the extent of hazardous materials on the property; and (5) water usage fees, in the respective amounts of $398.87 and $501.50, paid by the plaintiffs as part of the EPA cleanup.

### (a) *Property Damage and Economic Losses*

■■■ As discussed above, a private party cannot recover under CERCLA for property damage resulting from the release of hazardous substances, nor can that party recover for economic losses suffered as a consequence of such a release. *See Exxon Corp.*, 475 U.S. at 359, 106 S.Ct. 1103; *Gussack Realty Co.*, 224 F.3d at 91. Accordingly, the motion to dismiss should be granted as to these claims.

### (b) *Costs to be Incurred in the Future*

■■■ The plaintiffs have failed to allege that the costs for removal of debris and for pressure testing of the oil tanks will be incurred consistent with the national contingency plan. The plaintiffs have also failed to include in their complaint a request for a declaratory judgment as to future response costs. *See Gussack Realty Co.*, 224 F.3d at 91 ("CERCLA permits a private party to be reimbursed for all or

some of the costs already incurred in response to contamination .... CERCLA further permits a 'declaratory judgment allocating future response costs between potentially responsible persons."). However, even if the plaintiffs were allowed to amend their complaint to add such an allegation and such a request for relief, the complaint could still be deficient as to these claims, because CERCLA requires that the costs in question be "necessary costs of response." As discussed above, this means the costs must be incurred in response to a threat to human health or the environment, and incurrence of the costs must be necessary to address that threat. Here, the threat to human health and the environment was eliminated by the time the EPA cleanup concluded. The EPA cleanup left the plaintiffs' premises damaged and in need of repairs and/or other work in order to restore them to their former condition. However, the objective of such work as remains to be done in the future by the plaintiffs is not to address any threat to human health and the environment, but to address damage to the plaintiffs' premises resulting from the EPA cleanup. Thus, the plaintiffs' claim for these future costs is, in fact, a claim for property damage and/or economic losses and therefore not one that can be made under CERCLA. Accordingly, the motion to dismiss should be granted as to these claims.

(c) *Investigative Costs*

■ The plaintiffs assert that $1,150 in costs incurred by them for tests conducted, at their direction, to determine the extent of hazardous materials on the property are investigative costs recoverable under CERCLA. The definitions of the terms "remove" and "removal" bring costs of actions that are necessary to assess and evaluate a release or threat of release of hazardous substances within the scope of

necessary costs of response. However, such response costs are recoverable under CERCLA only if they conform to the national contingency plan. The plaintiffs have not alleged that such investigatory costs conform to the national contingency plan, nor have they indicated in their opposition to the motion to dismiss that they contend that such costs, in fact, conform to that plan. This is so notwithstanding the fact that a prominently featured argument in support of the motion to dismiss is that the plaintiffs failed to allege that the work related to these costs was performed "in a manner consistent with" the national contingency plan. (Doc. 10, at 10.) Accordingly, the motion to dismiss should be granted as to this claim.

(d) *Water Usage Fees*

■ Although no such allegation is included in the complaint, the plaintiffs contend they are entitled to recover the respective amounts of $398.87 and $501.50 for water usage fees paid by them in connection with the EPA cleanup of their property. One of the elements of a *prima facie* cause of action for contribution under CERCLA § 113(f)(1) is that the costs and response actions conform to the national contingency plan. *Bedford Affiliates*, 156 F.3d at 427. The national contingency plan requires that:

> Private parties undertaking response actions should provide an opportunity for public comment concerning the selection of the response action based upon the provisions set out below, or based upon substantially equivalent state and local requirements.

40 C.F.R. § 300.700(c)(6)(2001). However, this public participation requirement may be satisfied by a showing that work was performed with the involvement of the EPA or a comparable state agency. *See Bedford Affiliates*, 156 F.3d at 428

("Where a state agency responsible for overseeing remediation of hazardous wastes gives comprehensive input, and the private parties involved act pursuant to those instructions, the state participation may fulfill the public participation requirement.").

Here the plaintiffs appear to contend that the water usage was necessary to abate the hazardous substance threat and was considered by the EPA to be a necessary part of the EPA's response action. The plaintiffs also contend that they incurred the water usage fees and that the fees were not part of the EPA's response costs. Thus, the water usage fees are not covered by the Consent Decree and the plaintiffs' claim will not be barred by 42 U.S.C. § 9613(f)(2).

Drawing all inferences in a light most favorable to the plaintiffs, the court cannot conclude that they can prove no set of facts in support of their contentions as to the water usage fees that would entitle them to relief. Therefore, the court will permit them to amend their complaint to add a CERCLA contribution claim for such costs.

### B. Count Two—"Intentional and/or Reckless" Conduct

In Count Two of the complaint, the plaintiffs set forth a claim under Connecticut common law for "intentional and/or reckless" conduct. They seek to recover the same damages as in Count One. The motion to dismiss should be granted as to Count Two because the claim is barred by the statute of limitations, and also because the plaintiffs have failed to allege the requisite elements of such a claim.

#### 1. Statute of Limitations

■ The defendant argues that Count Two of the complaint should be dismissed because it is barred by the applicable stat-ute of limitations. See Nielsen v. Sioux Tools, Inc., 870 F.Supp. 435, 439–41 (D.Conn.1994) (claims should be dismissed under Rule 12(b)(6) when applicable statute of limitations has expired). The plaintiffs' claim in Count Two is governed by one of three statutes of limitations: (i) Conn. Gen.Stat. § 52–577, the three-year statute of limitations applicable to tort actions; (ii) Conn. Gen.Stat. § 52–584, the statute of limitations applicable to actions for damages caused by reckless or wanton misconduct; and (iii) Conn. Gen.Stat. § 52–577c(b), the two-year statute of limitations applicable to actions for damages caused by exposure to hazardous chemical substances. Although the plaintiffs have not taken a position as to which of these three statutes of limitations is applicable to Count Two, that fact is not material, because the claim in Count Two is barred under each of these statutes of limitations.

■ Section 52–577 provides that "[n]o action founded upon a tort shall be brought but within three years of the act or omission complained of." Conn. Gen. Stat. Ann. § 52–577 (West 2001). This statute is an occurrence statute, so the limitations period begins to run at the moment the act or omission complained of occurs. Gibbons v. NER Holdings, Inc., 983 F.Supp. 310, 314 (D.Conn.1997). The start of the running of the limitations period is not delayed until the cause of action has accrued or the injury has occurred. Fichera v. Mine Hill Corp., 207 Conn. 204, 212, 541 A.2d 472, 476 (1988). It is not delayed until the date when the plaintiff first discovers the injury. Collum v. Chapin, 40 Conn.App. 449, 451, 671 A.2d 1329, 1331 (1996). When a court conducts its analysis, the only relevant facts are the date of the alleged wrongful conduct and the date the complaint was filed. Id.

In this case, the plaintiffs allege that the defendant made shipments of hazardous

substances to National Oil without first determining whether it was able and had a permit to receive, store, process and dispose of said hazardous substances. The plaintiffs allege that the defendant's last shipment was made on October 31, 1997. Therefore, the last "act or omission complained of" occurred on October 31, 1997. The plaintiffs filed their complaint against the defendant on August 14, 2001, more than three years after the last act or omission complained of. Thus, this claim is barred under Conn. Gen.Stat. § 52–577.

Section 52–584 provides that

"No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct ... shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of ...."

Conn. Gen.Stat. Ann. § 52–584 (West 2001). Thus, at most, the plaintiffs had two years from the occurrence of the last act or omission complained of in which to file their action based on the claim in Count Two. As discussed above in connection with § 52–577, they failed to do so, and this claim is also barred under Conn. Gen.Stat. § 52–584.

■■■ Section 52–577c provides that "no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered." Conn. Gen. Stat. Ann. § 52–577c(b) (West 2001).

The plaintiffs' alleged damages arise from either the release by their tenant of hazardous substances onto the property on January 8, 1998 or the EPA's cleanup of the property, which occurred between January 8, 1998 and June 30, 1998. The plaintiffs, therefore, discovered their alleged damages, or in the exercise of reasonable care should have discovered those damages, no later than on or about June 30, 1998. The plaintiffs did not file their complaint against the defendant until August 14, 2001, more than three years later. Accordingly, the claim in Count Two is also barred under § 52–577c(b).

The plaintiffs argue that they were not made aware of the identities of the defendant and the others who delivered hazardous substances to National Oil until the EPA provided a list of their names on August 7, 2000 and April 11, 2001. Thus, the plaintiffs contend, they were not able to commence an action until that time. However, the statements made by plaintiff Bello at the June 11, 1998 meeting with the EPA make it clear that he was aware by no later than that date of both the fact that there was cause for concern because of the storage of hazardous substances at the property and of at least one means by which the plaintiffs could have obtained those names, i.e., obtaining them from the DEP.

The plaintiffs also contend that "this case is analogous to the period in which an action may be brought under CERCLA," and "[t]he EPA was not time barred from entering a suit against the defendants and lodging a consent decree dated September 14, 2001." (Doc. 18, at 10.) This argument is without merit. The plaintiffs were not barred by a statute of limitations from seeking relief under CERCLA. In Count Two, however, the plaintiffs set forth a common law claim, which is governed by the state statute of limitations applicable to that claim.

### 2. *Failure to Allege Requisite Elements of the Claim*

To state a claim for intentional or reckless misconduct under Connecticut law, a plaintiff must plead that the defendant's conduct was "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Dubay v. Irish*, 207 Conn. 518, 533, 542 A.2d 711, 719 (1988). A plaintiff must allege something more than simple or even gross negligence. *See id.* at 207 Conn. at 532, 542 A.2d at 718. Moreover, a complaint alleging intentional or reckless misconduct must use language explicit enough to clearly inform the court and opposing counsel which acts are alleged to be intentional or reckless. *Kostiuk v. Queally*, 159 Conn. 91, 94, 267 A.2d 452, 453–54 (1970). Simply using the words "intentional" and "reckless" is not enough. *See id.* (quoting *Dumond v. Denehy*, 145 Conn. 88, 91, 139 A.2d 58, 59).

In this case, the complaint does not contain any such allegations. The plaintiffs merely allege that the defendant's acts or omissions constituted intentional and/or reckless misconduct because the defendant failed to determine whether the plaintiffs' tenant, National Oil, was able and had a permit to receive, store, process and dispose of the defendant's hazardous substances. Accepting as true the plaintiffs' allegation that the defendant did not determine whether National Oil was able and had a permit to handle the defendant's hazardous substances, such a fact would not support a finding that the defendant's acts or omissions were either intentional or reckless misconduct under Connecticut law. At most, it would support a finding of negligence.

In addition, the plaintiffs have failed to allege any facts that would support a finding that the defendant owed them any duty of care. In a claim for intentional or reckless misconduct, the plaintiff must allege that the defendant owed him or it a duty of care. *See Sheiman v. Lafayette Bank and Trust Co.*, 4 Conn.App. 39, 45, 492 A.2d 219, 223 (1985) ("To be legally sufficient, a count based on reckless and wanton misconduct must ... allege some duty running from the defendant to the plaintiff."). Under Connecticut law, the defendant did not owe the plaintiffs a duty to foresee that the plaintiffs' tenant would fail to comply with the laws and regulations that governed that tenant's business as a disposal facility for hazardous substances, and there is no allegation or contention that the defendant actually knew that the tenant was conducting its business in violation of applicable laws. *See Accashian, et al. v. City of Danbury, et al.*, No. CIV. 970147228S, 1999 WL 30594, at *3 (Conn.Super.Ct. Jan. 8, 1999) ("[D]epositing waste material at a municipal landfill does not lead the depositor to foresee either immediate or eventual mismanagement of those materials in a facility subject to regulations and standards of operation.").

Accordingly, the motion to dismiss Count Two should also be granted for these reasons.

### IV. *Conclusion*

For the reasons set forth above, the defendant's Motion to Dismiss (Doc. 9) is hereby GRANTED, but the plaintiffs are given leave to amend their complaint, within 30 days, to state only a CERCLA contribution claim, pursuant to 42 U.S.C. § 9613(f)(1), based on the water usage fees. The plaintiffs' other claims are dismissed with prejudice.

It is so ordered.